# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA BLANCHARD, | ) | |
| | ) | No. 16 C 2117 |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan E. Cox |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara Blanchard ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("SSA") denying her Supplemental Security Income under Title XVI ("SSI") of the Social Security Act ("the Act"). Plaintiff has filed a brief, which this Court will construe as a motion for summary judgment [dkt. 14] and the Commissioner has filed a cross-motion for summary judgment [dkt. 21]. After reviewing the record, the Court grants Plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment. The ALJ's decision is reversed and remanded for further proceedings consistent with this opinion.

## BACKGROUND

### I.     Procedural History

Plaintiff filed a SSI application on June 29, 2011, alleging a disability onset date of February 1, 2011. (R. 131–36.) Her initial application was denied on August 2, 2011 and again at the reconsideration stage on March 8, 2012. (R. 68–79.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on April 19, 2012, which was held on January 15, 2013. (R.

80, 38–65.) Plaintiff appeared at the hearing with her attorney. (R. 40.) Vocational Expert ("VE"), Julie Bose was also present and offered testimony. (R. 58.) On March 14, 2013, the ALJ issued a written decision denying Plaintiff's application for DIB. (R. 24–34.) The Appeals Council ("AC") denied review on April 9, 2014, thereby rendering the ALJ's decision as the final decision of the agency. (R. 12–17); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).)

## II. Medical Evidence

Plaintiff was first assessed with abnormal glucose in January 2011, but was not diagnosed with diabetes mellitus ("diabetes") until April 2011. (R. 204, 289.) She presented for several follow-up appointments after her initial diagnosis, but the characterization of her diabetes remained relatively unchanged until six months later. (R. 207, 212, 243, 249.) On August 29, 2011, Plaintiff presented to her doctor with complaints of bilateral pain in her feet. (R. 243.) She was treated with ibuprofen. (*Id.*) Beginning in April 2012, Plaintiff reported long painful nails and calluses of the foot during ambulation. (R. 342.) She was instructed to ice, rest, and elevate her feet, engage in stretching exercise, as well as take nonsteroidal anti-inflammatory drugs ("NSAIDS"). (R. 344.) In June 2012, Plaintiff complained of numbness in her toe. (R. 337.) Then, in July 2012, Plaintiff reported bilateral plantar fasciitis[1], along with tenderness and pain. (R. 334.) Her treatment plan remained unchanged. (R. 336.) As of October 2012, Plaintiff reported that her foot pain had improved despite the fact that she had not engaged in her recommended exercises. (R. 360.) In November 2012, Plaintiff continued to report pain during ambulation; however, after examination, Plaintiff's doctor removed plantar fasciitis from her list of ongoing assessments. (R. 354–55; 362.)

---

[1] Plantar fasciitis "is one of the most common causes of heel pain." *Dorland's Medical Dictionary*, available at http://www.dorlands.com (last visited March 30, 2017) [hereinafter *Dorland's*].

Plaintiff's record contains other objective medical evidence related to her impairments; however, those records are not pertinent to our present analysis.

### III. Testimony

Plaintiff testified that, according to her doctors, all of her medical issues related to her feet can be attributed to her diabetes. (R. 49.) She stated that she cannot walk more than two blocks or stand for greater than thirty minutes due to her foot pain. (R. 50, 54.)

Additionally, Plaintiff completed a Work History Report. (172–79.) In the report, Plaintiff indicated that she had held several positions which were all generally categorized as a home healthcare assistant. (R. 172.) Most recently, Plaintiff worked as a home care aid which required her to walk six to seven hours per day, frequently lift ten pounds, and engage in some standing, sitting, stooping, kneeling, and reaching. (R. 178.)

A VE was also present and offered testimony. The ALJ first asked the VE to opine if Plaintiff had any past relevant work, as defined in the regulations. (R. 59.) The VE stated that Plaintiff had past relevant work as a home healthcare aide (DOT 355.674-014). (*Id.*) The VE reported that the position is listed as having a medium exertional level in the Dictionary of Occupation Titles, but Plaintiff's description of her duties suggested that she performed the job at a light exertional level. (*Id.*) The ALJ then asked the VE whether a hypothetical individual with Plaintiff's same age, education, work history, and who could occasionally lift and carry fifty pounds, frequently carry twenty five pounds, stand or walk for six hours in an eight-hour day, and sit for six hours – *i.e.*, could such an individual perform Plaintiff's past relevant work, either as actually or usually performed. (R. 60.) The VE opined that such an individual could perform Plaintiff's past relevant work as it was typically performed in the national economy. (*Id.*) The ALJ then asked the VE whether the same individual with the same characteristics (except now

limited to occasionally carrying and lifting twenty pounds, frequently carrying and lifting ten pounds, never operating foot control bilaterally, never balancing, climbing ladders, ropes, or scaffolds, and only occasionally climbing stairs or ramps) would be able to perform Plaintiff's past relevant work. (R. 60.) The VE opined that such an individual could perform Plaintiff's past relevant work as the Plaintiff had indicated she performed it, but would be excluded from the work as it is normally performed. (R. 60–61.) Then, the ALJ asked if the hypothetical individual could still perform Plaintiff's past relevant work if they were off task for more than twenty percent of the work day. (R. 61.) The VE opined that the additional limitation would not only preclude past relevant work, but any work, altogether. (*Id.*)

IV. **ALJ Decision**

On May 14, 2013, the ALJ issued a written determination denying Plaintiff's SSI application. (R. 24–34.) At step one, the ALJ determined that Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since June 29, 2011, the application date. (R. 29.) At step two, the ALJ found that Plaintiff had the severe impairments of diabetes mellitus, obesity, and hypertension. (*Id.*) He also determined that Plaintiff's plantar fasciitis did not constitute a severe impairment because it did not meet the duration requirements of the regulations. (R. 29.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 29–30.) At step four, the ALJ then assessed Plaintiff's Residual Functional Capacity ("RFC") and determined that Plaintiff could perform light work except that she could never operate foot controls bilaterally or climb ladders, ropes, and scaffolds. (R. 30.) He further limited her to only occasionally climbing ramps or stairs. (*Id.*) At step five, based upon the VE's testimony, the ALJ concluded that Plaintiff can perform her past

relevant work as a home health aide, leading to a finding that she is not disabled under the Social Security Act. (R. 33–34.)

While the ALJ found that Plaintiff's medically determinable impairments could be expected to cause her alleged symptoms, he found that her statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (R. 31–32.) First, the ALJ found that Plaintiff's allegations were not credible because they were unsupported by the medical record. (R. 32.) Similarly, the ALJ discounted Plaintiff's credibility because he found that no medical opinion stated that Plaintiff was unable to work, Plaintiff's treatment had been conservative and routine, and because she was able to participate at the hearing without any overt pain. (*Id.*)

## STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act, 20 C.F.R. §§ 404.1520(a) and 416.920(a), if it is supported by substantial evidence, and if it is free of legal error. 42 U.S.C. § 405(g). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). A "minimal[ ] articulat[ion] of her justification" is enough. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

## ANALYSIS

Plaintiff asserts that the ALJ made two errors: (1) the ALJ's RFC assessment was flawed because the ALJ failed to account for her foot complications and (2) the ALJ improperly analyzed her credibility. (Pl.'s Br. at 4). We address each argument separately below.

### A. The ALJ did not properly account for Plaintiff's foot complications when he determined her RFC

First, Plaintiff alleges that the ALJ did not adequately account for her foot-related complications when he restricted her RFC to no work involving "foot controls." Plaintiff argues that (1) the ALJ failed to support his RFC determination with substantial evidence and (2) the ALJ should have determined that she could only perform work at a sedentary exertion level. For the reasons that follow, we find that the ALJ did not support his RFC determination with substantial evidence.

An RFC is an administrative assessment of what work-related activities an individual can perform despite her limitations. SSR 96-8p; *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); 20 C.F.R. § 404.1545. When evaluating a plaintiff's RFC, the ALJ is required to include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. SSR 96-8p; *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). Moreover, the ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p.

First, we find that the ALJ in the present case failed to support his RFC assessment with substantial evidence, specifically because he did consider the collective effect of all of Plaintiff's impairments on her ability to work. SSR 96-8p; *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). At step two in the sequential evaluation process the ALJ categorized Plaintiff's plantar fasciitis as non-severe because he found that it did not meet the durational requirement to be

considered a severe impairment. 20 C.F.R. § 416.920(c); (R. 29.) However, classification of Plaintiff's plantar fasciitis as non-severe did not eliminate the ALJ's duty to later consider the impairment when formulating his RFC assessment. Instead, the ALJ should have considered Plaintiff's plantar fasciitis "in concert with [her] other impairments to determine their collective effect on her ability to work." *Thomas*, 745 F.3d at 807. Here, the ALJ neither considered Plaintiff's plantar fasciitis in conjunction with the remainder of Plaintiff's severe impairments, nor articulated an analysis that implicitly considered all of Plaintiff's aliments (including her plantar fasciitis) in conjunction.[2] He individually pointed to records which involve her toe, her neurovascular function, and her calluses, but failed to mention her heel pain. (R. 32). Therefore, we cannot conclude that the ALJ collectively considered all of Plaintiff's impairments when formulating his RFC assessment, and by extension, cannot say that he supported his finding with substantial evidence.

Second, we acknowledge that the Seventh Circuit has applied the doctrine of harmless error to Social Security disability decisions, but we are unable to find the doctrine applicable in the present case. *Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003). In his decision, the ALJ determined that Plaintiff's diabetes constituted a severe impairment under the Regulations. (R. 29.) At her administrative hearing, Plaintiff testified that all of her foot-related complications were attributable to her diabetes. Furthermore, her objective medical evidence reveals that her plantar fasciitis persisted, at minimum, from July 2012 to November 2012. Although the ALJ considered some of the records related to Plaintiff's foot during the relevant period, he ignored others which indicated ongoing plantar fasciitis. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir.

---

[2] In his decision, the ALJ included language which stated that "in making this finding, the undersigned has considered all [of Plaintiff's] symptoms." (R. 30.) The Court believes this is "boilerplate" language that the Seventh Circuit has repeatedly stated is not sufficient analysis on the part of an ALJ. Boilerplate language is language that "fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered" when making his determination. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (citations omitted).

2010) ("[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). For example, the ALJ pointed to Plaintiff's July 2012 doctor's appointment to demonstrate that Plaintiff had normal neurovascular function in her feet, but ignored evidence from the same record which states that the purpose of Plaintiff's visit was to follow-up regarding her plantar fasciitis. (R. 32; 334–36.) Because all of Plaintiff's foot complications were a direct result of her diabetes, which limited her ability to work, the ALJ was required to assess the impact that her plantar fasciitis would have on her RFC assessment. We cannot find that his failure to address her plantar fasciitis either implicit or explicitly constitutes a harmless error.

It is possible that an ALJ, upon reconsideration of all the evidence, may reach the same conclusion regarding Plaintiff's disability status as in the present case; however, at this time the ALJ's decision does not provide enough detail for us to review his RFC determination in a meaningful way. *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). Therefore, based on the aforementioned, we cannot say the ALJ's decision was grounded in substantial evidence. We must remand this case so that the ALJ can determine Plaintiff's disability status in light of her plantar fasciitis and support his conclusion with substantial evidence.

**B.     On remand the ALJ should re-evaluate Plaintiff's credibility in light of SSR 16-3p**

Next, Plaintiff alleges that the ALJ improperly assessed her credibility. (Pl.'s Br. at 7–9.) Plaintiff makes several arguments in this regard, including (1) it was illogical for the ALJ to find her testimony "not entirely credible" while simultaneously accepting her allegations of foot pain; (2) the ALJ's RFC determination should have been completely consistent with her allegations of pain; and (3) the ALJ's reliance on the nature of her treatment, the lack of medical opinions, and his own observations at the hearing were misplaced.

8

Since the ALJ issued her decision in Plaintiff's case, the Social Security Administration has issued new guidance on how an ALJ is to assess a claimant's credibility. *See* SSR 16-3p, 2016 WL 1119029 (effective March 16, 2016), superseding SSR 96-7p. The new guidance eliminates the term "credibility" from its sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, at *1. "While [this] new policy statement does apply to matters on appeal, the Court is also bound by case law concerning the same regulatory process under the 'credibility' analysis of former SSR 96-7p." *Farrar v. Colvin*, No. 14 C 6319, 2016 WL 3538827, at *5 n.3 (N.D. Ill. June 29, 2016). On remand, the ALJ should re-evaluate Plaintiff's subjective symptoms in light of SSR 16-3p.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. This matter is remanded for further proceedings consistent with this opinion.

Entered: 4/17/2017

_____
U.S. Magistrate Judge, Susan E. Cox